George DUSHON, Harold Rathgeb, Hilton Duke, Peter J. Vallentine, Nels Pilskog, Joe Miszencin, and Thomas J. Golden, Appellants,

v.

UNITED STATES of America, Appellee.

No. 14922.

United States Court of Appeals Ninth Circuit.

April 23, 1957.

Rehearing Denied June 18, 1957.

Harold J. Butcher and Geo. Grigsby, Anchorage, Alaska, for appellants.

William T. Plummer, U. S. Atty., Anchorage, Alaska, and Donald A. Burr, Asst. U. S. Atty., for appellee.

Before HEALY, POPE, and HAMLEY, Circuit Judges.

HEALY, Circuit Judge.

Appellants brought this suit under the Federal Tort Claims Act to recover damages for injuries caused by the negligence of one Harold D. Greene, assertedly an employee of the United States. The trial court found that Greene was an employee of an independent contractor and not of the United States, and accordingly denied recovery.[1]

1. The Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), in material part reads: "(b) Subject to the provisions of chapter 171 of this title, the district courts

* * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * for injury or loss of property, or per-

The sole question presented on appeal is whether or not this holding is error. We are satisfied that it is not.

Briefly summarized, the background facts are these: The Alaska Railroad, which is a single track road traversing the area between Seward and Fairbanks, Alaska, is an agency of the United States. In 1949 it entered into a contract with three heavy construction contractors,[2] one of which was the Morrison-Knudsen Company, Inc., for the rehabilitation of a portion of its railroad tracks south of Anchorage, between the two stations known as Potter and Indian. The terrain necessitated that men, equipment and materials be moved over the Alaska Railroad tracks to the place of work. The right of access to the job was derived from the contract, but in order to obtain such access the contractor had to provide rail motor cars and unpowered track cars, or "man-haul" cars, for utilization of the tracks. Some of these cars were purchased by the joint contractors and some were rented from Morrison-Knudsen Company, which in turn had a previous rental agreement for them with the Alaska Railroad. This latter rental agreement did not pertain to the construction project.

The appellants, who were employees of the contractor, were injured while being transported in man-haul cars propelled by a rail motor car operated by Harold D. Greene, who was also an employee of the contractor. In rounding a curve, where the view was obstructed, the cars collided with a train of the Alaska Railroad. Concededly the collision and resultant injuries were due solely to Greene's negligence.

In permitting the contractor to operate on its tracks, the Alaska Railroad never hired nor sent any motor car operators anywhere for the contractor. However, the latter's employees who were to operate rail motor cars were required by the Railroad to conform to certain of its operating procedures, and the Railroad retained the right to approve any motor car operator selected by the contractor. In order to determine whether the contractor's employees whom the contractor had designated to operate the rail motor cars were qualified to do so, the Railroad required such operators to taken an examination as to the operating rules of the Railroad. Upon approval being given, a certificate of examination was delivered to that person. Such a certificate did not constitute a permit or license for that person to operate on the Railroad's tracks but was merely a means of identifying that such person appeared qualified to operate a rail motor car. In this instance Greene had been issued the requisite certificate after his examination.

Greene had been employed for something like a year by the Morrison-Knudsen Company, and he continued with that concern until taken over by the contractor to operate rail motor cars on the joint project. His salary was paid by the contractor. He was selected for the job by the project manager for the contractor, and all the directions and orders to perform work given to Greene were given by the contractor. There were no orders or other restrictions given to or placed upon

sonal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Chapter 171, § 2671. Definitions, provides in material part that the term " 'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States." The term "Employee of the government" is defined as including "officers or employees of any federal agency, * * * and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

2. The contract was joint, and the three construction concerns are generally referred to in the briefs and in this opinion as "the contractor."

Greene by the Alaska Railroad in the use of its track.

The various rules and regulations adopted by the Railroad, above noted, were enforced for the purpose of safeguarding and protecting the Railroad's property and passengers. In the event of an infraction of these rules, Greene was not subject to being penalized or discharged by the Alaska Railroad but was subject only to disqualification as a rail motor car operator for the contractor.

Part of the Railroad's operating procedure was to issue and transmit twice a day to its personnel involved information of contemplated movements taking place upon its tracks, which information was called a "line-up." As a rail motor car operator, Greene, in order to conform to the Railroad's rules and regulations, had to obtain such a "line-up." Safety precautions of the Railroad required that in rounding a curve (such as the one on which the collision occurred) where the view was obstructed, a flagman was required to be sent out to protect against any approaching train and it was the responsibility of the rail motor car operator to see that the track was clear.

The contractor's campsite was at a place called Rainbow, located in the work area south of Potter and some four or five miles north of Indian. On March 24, 1950, Greene was under orders of the contractor to proceed south from Rainbow to Indian and pick up a work crew at the end of the day's shift at approximately five o'clock p. m. and return them to camp. Greene had received the "line-up" for the day. After a train of the Alaska Railroad, designated as No. 4, which was going north, left Rainbow between three and four p. m. of that day, Greene started south toward Indian with his rail motor car pulling four empty man-haul cars. In the course of returning from Indian, after picking up members of the contractor's crew, including the plaintiffs, Greene's rail motor and man-haul cars while traveling in a northerly direction on a blind curve collided with "Alaska Passenger Extra 562

South" traveling toward Indian. This was the collision which caused the injuries above mentioned. Its occurrence was traceable directly to Greene's failure to determine whether or not the track was clear.

As already indicated, appellants have formally abandoned all arguments advanced below save the single contention that their injuries were caused by the negligence of an employee of the United States, namely, Greene. The uncontroverted facts recited above, plus the provisions of the Tort Claims Act itself, would appear to render that contention untenable. However, several arguments are advanced in attemped support of it, and these we will notice briefly.

It is said that Greene was an "employee" of the Alaska Railroad because while operating on its tracks he was under the "control" of the Railroad. The facts showing such "control" are said to be that Greene was approved as a motor car operator by the Railroad, and while operating on its tracks was supposed to obey certain safety regulations prescribed for the protection of passengers and freight of the Railroad. However, Greene was not hired by the Railroad, nor was he paid wages by it. The sole purpose of his going on the tracks was to render service to the contractor who had hired him and who paid his wages. Subject only to the fact that he was not to make trips which would interfere with the Railroad's service, the latter could not determine the nature of his work or his job assignment, nor direct when or where he should make his trips.

The test of "control" is only one of the factors to be weighed in determining whether an agency or employment relationship is present. The showing of "control" here was entirely inadequate to support a holding that such a relationship existed.

Assuming that their showing of control was insufficient to establish an agency or employee relationship, appellants argue in the alternative that the

case presents an exception to the rule that such a relationship need be present in order to render the government liable. One such argument advanced is that inasmuch as the Railroad permitted the contractor to use its tracks, it must be held to have assumed liability for the latter's negligence.

The auhorities cited for this proposition are cases involving leases by private railroad companies to subsidiaries. Such authorities, and others of like nature, afford no analogy here. The Alaska Railroad is not a privately owned concern but a Federal Agency. There are no statutes or regulations defining its powers or obligations except the Act of Congress under which it was acquired and which gave the President complete discretion in its construction and operation. Consult Enabling Act, 48 U.S.C.A. §§ 301–308. Under that statute the government was obviously free to delegate to an independent contractor, as here, the proprietary function of rehabilition or repair involved.

 Finally, it is contended that a railroad is a dangerous agency, and that the government can not shield itself from liability, based on imputed negligence, by employment of an independent contractor. Authorities called to our attention afford no basis for believing that as of the present time a railway is to be considered a dangerous instrumentality.

Altogether apart from what has been said, there remains the overriding principle that the United States has not consented to be sued under the Tort Claims Act on any ground other than that of a wrongful or negligent act or omission on the part of an employee of the government. Dalehite v. United States, 346 U. S. 15, 44, 73 S.Ct. 956, 97 L.Ed. 1427. Appellant argues that Dalehite has been overruled by Rayonier v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354. However, Rayonier overruled Dalehite only to the extent of holding that the government can not escape liability on the ground that a municipal corporation might not be liable for similar negligence of its employees while performing a sovereign governmental function. The principle that the United States may be held liable only for the negligent acts or omissions of an employee of the government is in nowise affected.

Affirmed.