353 P.2d 985

Russell T. PALMER, Plaintiff and Respondent and Cross-Appellant,

v.

WASATCH CHEMICAL COMPANY, Defendant and Appellant.

No. 9199.

Supreme Court of Utah.

July 8, 1960.

Young, Thatcher & Glasmann, Ogden, for appellant.

Kipp & Charlier, Salt Lake City, for respondent.

WADE, Justice.

Russell T. Palmer, respondent and cross appellant herein, brought suit against the Wasatch Chemical Company, appellant herein, for injuries sustained when the bottom of a carboy of acid sold and delivered by appellant to respondent's employer, General Mills, Inc., fell out while being moved by respondent and another employee, spilling the acid and seriously burning respondent.

Repsondent's complaint contained two counts. One charged appellant with negligence in delivering a dangerous substance in a defective container, which defect would have been revealed by due care and inspection; and the second count charged that appellant had warranted the carboy was safely constructed to hold the contents so that it could be carried from the place of storage to place of use, and that this warranty was breached. At the conclusion of the trial the court granted appellant's motion to dismiss the count based on negligence, but submitted the case to the jury on interrogatories and instructions which required the jury to find whether reasonable care had been used by the parties to this suit. Respondent's cross appeal is from the court's dismissal of the count based on negligence. The jury found in favor of Mr. Palmer, and the Wasatch Chemical Company appeals from that verdict and judgment thereon.

The evidence disclosed that Palmer was a laboratory technician employed by General Mills, Inc. to make tests on grain, and had been in that employment for approximately 15 years. Sulphuric acid was used in these tests. On the day of the accident, he and a fellow employee went from the second floor of the building in which the laboratory was located to the basement, where the carboys of sulphuric acid were stored, to get a full carboy to replace an empty one. In order to carry the carboy from the basement to the laboratory, they pushed it out from its place of storage and then attached a litter-type device consisting of two rails. which they clamped underneath the flanges of the wooden box, and then with one of

them stationed in the front end of the rails and the other in the rear end, they lifted the carboy about a foot when its entire bottom fell out and the bottle fell to the floor shattering and spilling the acid, causing respondent severe injuries.

The record also discloses that appellant did not manufacture or own the carboys and that these were bought from another chemical company for resale of the acid they contained, but that title to the bottles and carboys remained in the manufacturer. The carboys of sulphuric acid supplied by appellant to General Mills were wooden boxes or frames which encased six and one-half gallon machine-blown glass bottles. These carboys and bottles were manufactured in accordance with specifications set forth in Interstate Commerce Commission regulations. The particular carboy involved in this case was a used wooden box which at least originally should have contained rubber buffers or cleats in the corners in each end (top and bottom) of the box when the bottle was completely encased. When thus encased the cleats prevent the bottle from touching the sides of the box. At the time of the trial, for some unexplained reason one of the cleats was missing. Once the bottle has been placed in the carboy and supported by the cleats, it is practically impossible for a person to take it out or even move it much in the box if the carboy is in good condition and not defective. Appellant's president testified its

employees usually inspected the carboys and if any defects were noticeable, repaired them.

Although the accident occurred on July 28, 1958, the last three carboys ordered by General Mills and delivered by appellant was on May 16, 1958, when they were trucked in from Salt Lake City, Utah to the General Mills building in Ogden, Utah, and there placed by appellant's truck driver, after unloading them onto the ground, on a small two-wheeled hand truck furnished by General Mills. This hand truck had a shelf at the bottom which was about half the width of the carboy, and the rest of the carboy projected out beyond the shelf. Having placed the carboy on the hand truck, appellant's truck driver then wheeled it toward the stairway leading to the basement and bounced it down to the basement, where he wheeled it to its storage place, tipped it down and left it there.

Appellant contends that it is not liable to respondent on the basis of either an express or implied warranty because (1) it sold sulphuric acid and not the carboy which it did not own, and did not owe respondent a duty to inspect the carboy for latent defects, such duty being that of the manufacturer, who had the knowledge and means of discovering such defects; and (2) there was a lack of privity between appellant Wasatch Chemical Company and respondent Palmer.

Although there are cases[1] which appear to hold a seller of chattels to strict liability to a buyer regardless of knowledge of any latent defect in the product on the ground that under a sales act such as ours [2] he warrants the merchantability of the product, nevertheless the facts as disclosed in the instant case do not require the application of the principle of strict liability based on warranty.

Appellant herein was more than a mere conduit from a manufacturer to a consumer of a container not inherently dangerous if it contained no latent defects. Appellant is a manufacturer of chemicals, and although it did not manufacture the sulphuric acid or the bottles or carboys in which the acid was contained, it was, or should have been, peculiarly fitted because of the nature of its business to recognize defects which might prove harmful to users, and could reasonably foresee that harm could befall such a user unless it used reasonable care to inspect, discover and repair such defect. The carboy delivered was a used carboy. As stated in Restatement of the Law of Torts, Sec. 402:

"A vendor of a chattel manufactured by a third person is subject to liability as stated in Sec. 399, if, although he is ignorant of the dangerous character or condition of the chattel, he could have discovered it by exercising reasonable care to utilize the peculiar opportunity and competence which as a dealer in such chattels he has or should have."

Furthermore, appellant undertook to deliver the carboy and its contents, and if in so doing the package was handled by it in such a manner that damage might be caused to the carboy containing a dangerous substance such as sulphuric acid, it could naturally be found to be negligent in the manner in which this service was rendered, and thereby liable for any harm caused to persons who it could foresee would come in contact with the product.

The court in its Instruction No. 8 told the jury that:

"Mr. Palmer has not only the burden of proving that the defect was present at the time of delivery but also that the defect was a 'substantial defect.' A substantial defect in this case is defined as one that rendered the package so unsafe that a reasonably prudent person exercising ordinary care for the safety of others would not have delivered a package with such a defect or would have specifically warned the receiver of the presence of the defect. Also, it must have been such a defect that its delivery would have been with-

---

1. Cooper et al. v. Newman et al., City Ct., 11 N.Y.S.2d 319; Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339.

2. Sec. 60–1–15, U.C.A.1953.

held or warned of because a reasonably prudent person exercising ordinary care for the safety of others would have foreseen the risk of an incident of the general type of the incident alleged by Mr. Palmer."

Appellant's liability under this instruction depends on whether it failed to exercise ordinary care for the safety of others in delivering the carboy, bottle and acid. The jury's answers to the court's interrogatories constitute a jury finding that the appellant Chemical Company failed to exercise ordinary care for the safety of respondent Palmer.

Appellant argues that because it bought the sulphuric acid from a reputable manufacturer who was subject to stringent and rigid requirements of the United States Interstate Commerce Commission regulations in the manufacture of the carboys, that it could rely on these facts in assuming that the carboy was free from hidden danger and therefore would not foresee that its delivery would be likely to cause harm to anyone. It further argues that there was no evidence of what sort of defect existed at or prior to the time of delivery or that a cursory examination would have revealed a defect. This argument assumes that an inspection was made. There is no direct evidence that the particular carboy from which the bottom fell out had ever been given any kind of inspection by respondent, cursory or otherwise. True,

there was testimony that it was the policy of the respondent to inspect carboys for discoverable defects and that its employees were instructed to do so. This, however, is only evidence of a circumstance which the trier of the facts, if it chooses, can consider as tending to prove that this particular carboy was inspected. However, it is not such a circumstance as compels such a conclusion. It is equally reasonable for a trier of the fact to have found from the circumstances that the carboy was not new, and that it had received rough handling in its delivery, that a reasonable inspection would have revealed a defect present at the time of delivery which would make it unsafe in view of its dangerous contents, and therefore it could reasonably be foreseen that it might cause harm. Under this view of the evidence, the jury was justified in finding as it did, that there was a substantial defect present in the carboy at the time of delivery, and in view of the court's instruction that the defect must have been of such a nature as to cause a reasonably prudent person to withhold delivery, the defect must have been such as would have been apparent upon a reasonable inspection to a person dealing in such products.

Although the court purported to have dismissed respondent's count on negligence, it in fact by its interrogatories and instructions submitted the question of appellant's negligence to the jury. Since

there is sufficient evidence to sustain the jury's answers to the interrogatories, which answers would be a basis for liability for negligence, we are of the opinion that the court's mistaken belief that it was submitting the question of appellant's liability on the theory of warranty was not prejudicial. The jury was told that respondent claimed a breach of appellant's contract to supply the acid in a reasonably safe container, and then was required to answer interrogatories in view of specific instructions. These instructions were equally as applicable to a theory of liability on the ground of negligence as they were on the ground of warranty. The mistake here is analogous to the effect of an error we discussed in Ferguson v. Jongsma,[3] wherein we pointed out that often terms are used which are interchangeable, such as assumption of risk and contributory negligence. We said there:

"* * * These terms are often used interchangeably; sometimes both are used when only one is applicable, and often the term assumption of risk is used when there is a total lack of evidence to support a finding that plaintiff's recovery is barred by that doctrine and under some fact situations both assumption of risk and contributory negligence would bar recovery. If the instruction is based on a factual situation which would support a finding of contributory negligence but the instruction erroneously called it assumption of risk, this alone would not be prejudicial error."

The above disposition of the case renders it unnecessary to consider the question of privity of contract between the plaintiff, Palmer, and the Wasatch Chemical Company.

Affirmed. Costs to respondent.

CROCKETT, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, J., concurs in the result.

---

3. Ferguson v. Jongsma, 10 Utah 2d 179, 350 P.2d 404, 411.