**Gilbert Earl YATES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 10089.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 10, 1965.

Decided July 29, 1966.

**664**

Howard I. Legum, Norfolk, Va. (Fine, Fine, Legum, Schwan & Fine, Norfolk, Va., on brief), for appellant.

Edward Berlin, Attorney, Department of Justice (John W. Douglas, Asst. Atty. Gen., and Sherman L. Cohn and Florence Wagman Roisman, Attorneys, Department of Justice, and Claude V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and MAXWELL, District Judge.

MAXWELL, District Judge.

Yates brought this action under the Federal Tort Claims Act (28 U.S.C. §§ 1346, 2401, 2671–2680), seeking damages for injuries sustained in a fall suffered while an employee of Air Mod Corporation, a government contractor, at Dover Air Force Base, Delaware. The District Court, in an extensive and well reasoned opinion, found that the Air Force had not been negligent with regard to appellant's fall, rendered judgment for the United States, and Yates now appeals.

Summarized, the facts of this case show that Air Mod Corporation, appellant's employer, had contracted with the Air Force to do "heavy maintenance" work on Air Force transport planes. In accordance with the contract, the Air Force assigned to Air Mod five of the six hangars opening onto a concrete ramp known as "Pad 4." The sixth hangar was used by the Air Force as a ground power shop. The ramp itself served as a taxi strip, or apron, over which the various airplanes, which Air Mod was servicing, could be moved to their proper locations. Only aircraft assigned to Air Mod for servicing were moved on Pad 4. North of Pad 4 were two additional hangars which also were assigned to Air Mod. Between these buildings and Pad 4 was an asphalt or macadam aircraft parking apron.

Under Air Mod's contract, the Air Force furnished not only buildings and ramp space, but also most of the equipment required by Air Mod. When Air Mod furnished equipment it was compensated under its cost plus fixed-fee contract. It is significant that Air Mod was responsible for "housekeeping functions" for equipment and space "assigned solely for the use of the Contractor." [1]

On December 12, 1957, appellant, who was employed by Air Mod at the Dover Air Force Base as a painter, had been working with and under the direction of one Hartnett, another Air Mod employee. Hartnett's "gang" had been working on an aircraft on the northern parking apron, approximately 300 yards from Hangar No. 1 (Building 794). At Hartnett's request, just prior to 6 p. m., the appellant accompanied Hartnett to Hangar No. 1 to obtain some paint and other supplies. As Hartnett and appellant walked to Hangar No. 1, Hartnett noticed a dolly located 15 to 20 feet from the hangar door.

---

1. The pertinent provisions of the contract are:

(2) During the performance of this Contract, Contractor will have access to and use all base shop facilities and equipment at Dover Air Force Base, Delaware. Specific docks, hangar space, ramp space, office and supply space will also be assigned to the Contractor by the Commander, Dover Air Force Base, at his discretion. All equipment to be used jointly by the Contractor and Military personnel will be done so on an allocated basis, established by the Base Chief of Maintenance. When equipment and/or space is assigned solely for use of the Contractor, during such time as the assignment is in effect, housekeeping functions for those facilities will be the Contractor's responsibility. For any shops, hangar or other facilities which are used jointly by the Contractor and the Military, the Contractor will be responsible for housekeeping functions in proportion to the period and percentage of use and occupancy of these facilities by the Contractor. Housekeeping functions will not include structural repairs of fixed property.

\* \* \* \* \*

(5) The facilities and/or areas being utilized by the Contractor will be furnished all necessary utilities by the Government. Any utilities billed to the Contractor by the Government will be reimbursable items of cost. Said utilities shall include, but are not limited to, electricity, heat, water, air, lighting and telephone service.

\* \* \* \* \*

(40) Safety and Accident Prevention: If this contract is performed in whole or in part on premises under the direct control of the Government, the Contractor shall conform to all safety regulations and requirements covering such premises in effect at any time during the performance of the Contract. The Contractor agrees to take all reasonable steps and precautions to prevent accidents and preserve the life and health of Contractor and Government employees performing or in any way coming in contact with the performance of this contract on such premises. \* \*

The dolly, painted yellow, was used to convey garbage cans to the incinerator and, on occasion, to carry paint. The dolly stood 10 to 12 inches high, 30 inches wide, and 36 to 40 inches long. The dolly was part of the Air Force equipment assigned to Air Mod.

At approximately 6:30 p. m., Hartnett and the appellant, each carrying paint and other equipment, began to walk from the hangar, back to the aircraft on which they had been working. As they walked, Yates tripped and fell over the dolly, which was in the same position it had occupied when Hartnett had noticed it while en route to the hangar.

At the time of the accident, the four 300-watt lights on the front of Hangar No. 1 were not lit. The switches, which controlled those lights, were located in a box at the rear of Hangar No. 1. The light switch box had a lock, and the key was held by the dock chief, an Air Mod employee.

Appellant brought this suit against the United States to recover damages for injuries he sustained as a result of his fall alleging that the dolly's presence and the absence of lights on Hangar No. 1 constituted a breach of the Air Force's duty to keep the area around Hangar No. 1 reasonably safe for him.

The District Court held that the Air Force owed no duty to Yates because the premises and equipment allegedly responsible for his injury were under the exclusive control of Air Mod, an independent contractor, and that if the Air Force owed any duty to Yates, the duty was to eliminate dangers of which it had notice, but that the Air Force had neither actual nor constructive notice of the fact that the lights on Hangar No. 1 were out. The District Court also found that Air Mod bore the responsibility of turning on the lights and of removing such obstructions as the dolly from Pad 4, and recorded that Air Mod had breached the duty to provide a reasonably safe place for appellant to work. Since the District Court found the Air Force innocent of negligence, it made no "definitive finding" as

as to whether Yates had been contributorily negligent.

We agree with the determination of the District Court and affirm its disposition of the case.

There are three overriding issues in this case. The first question is whether Air Mod was an independent contractor on land over which the United States Government, the landowner, had given up all right of control, and if so, whether, under Delaware law, such a landowner is responsible for ameliorating potentially dangerous conditions, which have been created by the independent contractor on the land.

The second is whether, under Delaware law, a landowner, who retains control of the premises, bears any responsibility for ameliorating potential dangers of which he had neither actual nor constructive notice.

The third question is whether by virtue of the Federal Tort Claims Act (28 U.S.C. §§ 1346, 2401, 2671–2680), Congress waived the Government's sovereign immunity in cases where an independent contractor's employees have been guilty of negligence.

The Court is of the opinion that each of these three issues in this case must be answered in favor of the appellee, the United States Government.

■ Turning to the first issue, we believe Air Mod was, in the truest sense of the phrase, an independent contractor. Although the Air Force retained the right to inspect Air Mod's aircraft maintenance work, to make certain that it had met contract specifications, and although the Air Force also retained the right to patrol the Pad 4 area of the base, for security and traffic reasons, neither of these two roles was of sufficient supervisory character to negate our conclusion that Air Mod was an independent contractor. Dushon v. U. S., 17 Alaska 245, 243 F.2d 451–453 (9th Cir. 1957), cert. den. 355 U.S. 933, 78 S.Ct. 415, 2 L.Ed.2d 416 (1958); Strangi v. United States, 211 F.2d 305, 307–308 (5th Cir. 1954); E. I. Du Pont

De Nemours v. Griffith, 50 Del. 348, 130 A.2d 783 (1957).

■ Generally, a landowner is not liable for injuries suffered by servants of an independent contractor. 57 C.J.S. Master and Servant § 600 (1948).

■ An exception to the rule arises when the landowner has retained control over the property on which work is being performed. The landowner then has a duty to use ordinary care, so that the premises will be reasonably safe for the independent contractor's servants. Dillingham v. Smith-Douglass, 261 F.2d 267, 269 (4th Cir. 1958); 57 C.J.S. Master and Servant § 603 (1948); 38 Am.Jur. Negligence, § 94 (1941).

This exception to the general rule has been recognized by Delaware courts also. See Reardon v. Exchange Furniture Store, 37 Del. 332, 188 A. 704 (1936).

■ The question from the present facts in this case, therefore, is whether the Air Force retained substantial physical control over the Pad 4 area of the base.

It has been argued that since major repairs to the hangars and pads were to be made by the Air Force, the Government had not relinquished control over the premises.

But we are of the opinion that *control* must be looked at from at least two angles: (1) control of major repairs (*e. g.*, the erection of a new roof on one of the hangars), and (2) control of housekeeping functions (*e. g.*, the turning on and off of the floodlights outside the hangars). While it is true that the Air Force retained control over the first group of contingencies, it also is clear, from the face of the contract and from the depositions taken, that it substantially relinquished control over the second group.

■ As the District Court noted, the Air Force retained no genuine control over Hangar No. 1 and the light switches governing its outside floodlights. Control of the floodlights was an essential part of Air Mod's "housekeeping duties."

For purposes of this case, consequently, it must be concluded that Air Mod was an independent contractor on land over which the United States Government had given up the substantial physical right of control. The disposition of this case is governed by the general rule, which under the present circumstances frees a landowner from liability for injuries suffered by an independent contractor's servants, and not by its exception.

■ While no Delaware case has been found directly on point, it is apparent that in this case the Delaware law follows the general rule and does not hold the United States responsible for ameliorating the potentially dangerous condition created by the independent contractor.

Before concluding our remarks on the merits of the first issue, we note, for purposes of the record, that Yates has cited a number of cases in support of his position. Many of the cases, however, can be distinguished simply because the defendant landowners had complete or at least substantial physical control of the premises on which the plaintiffs were injured. *E. g.*, Greco v. 7-Up Bottling, 401 Pa. 434, 165 A.2d 5 (1960); Austin v. Riverside, 44 Cal.2d 225, 282 P.2d 69 (1955); Stevenson v. Pennsylvania Sports, 372 Pa. 157, 93 A.2d 236 (1952), where the servants of what may have independent contractors brought suits against landowners, and Diamond State Iron Co. v. Giles, 7 Houst. 557, 11 A. 189 (1887), where suit was instituted by an employee against his master. Therefore, these cases, which Yates has cited, are not persuasive since they all presuppose the question here in issue.

The second question before the Court, is whether, under Delaware law, a landowner, who retains control of the premises, bears any responsibility for ameliorating potential dangers of which he had neither actual nor constructive notice.

In light of our holding on the first issue, a resolution of the second question is not now necessary, but in order to buttress further the disposition of this case, we will now inquire briefly into the merits of the second issue.

There is no evidence in the records of this case which suggest that the Air Force had actual notice of the floodlights not being turned on.

Neither is there any reason for concluding that the Air Force had constructive notice. Thompson v. Cooles, 37 Del. 83, 180 A. 522 (1935). As the District Court noted in its memorandum: "We must consider the nature of the defect, the size and activity of the premises. * * *" It seems incongruous to suppose that in a complex as large as the Dover Air Force Base, where, at any given moment, hundreds of major contingencies can arise, which the Air Force should effectively foresee, the failure of an independent contractor to turn on a floodlight is of such magnitude as to put the United States Government on constructive notice, especially when that independent contractor is in possession of the keys necessary for operating the switchbox.

The same, of course, must be said of Yates' contention that the Air Force is liable for having failed to observe the dolly in a position of potential danger. In this case, it would be even more tenuous to find actual or constructive notice, in view of the fact that the dolly is a relatively small and extremely movable object.

■ Since the Air Force had neither actual nor constructive notice of the negligent acts complained of by Yates, it follows, for purposes of the second issue, that there is nothing on which to base the Government's liability. Therefore, even if we were to have concluded that the Air Force had retained control of Pad 4, the Government, under Delaware law, still would not have been responsible for ameliorating the potential dangers mentioned

by Yates. Robelen Piano v. Di Fonzo, 53 Del. 346, 169 A.2d 240 (1961).

The third issue is whether by virtue of the Federal Tort Claims Act (28 U.S.C. §§ 1346, 2401, 2671–2680), Congress waived the Government's sovereign immunity in cases where an independent contractor's employees have been guilty of negligence.

■ We believe that Congress did not. By virtue of the act, Congress waived the Government's sovereign immunity only when an "employee of the government" is negligent. 28 U.S.C. § 1346(b). "Employee of the government" is defined so as to include "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently * * *," 28 U.S.C. § 2671, but this definition is not broad enough to cover employees of an independent contractor such as Air Mod. Dushon v. United States, supra, 243 F.2d 451 (9th Cir. 1957), cert. den. 355 U.S. 933, 78 S.Ct. 415, 2 L.Ed.2d 416 (1958); Strangi v. United States, supra 211 F.2d 305 (5th Cir. 1954); Mahoney v. United States, 220 F.Supp. 823 (E.D. Tenn.1963), aff'd 339 F.2d 605 (6th Cir. 1964); Benson v. United States, 150 F. Supp. 610 (N.D.Cal.1957). This issue, as well as the previous two, must be decided in favor of the United States Government.

In closing, we note that Yates has cited a large number of cases in his brief. A great many of them, however, dealt with injuries caused by an inherently dangerous instrumentality. The District Court was entirely correct in observing that there is no such issue in this case.

For the reasons indicated herein, the judgment of the District Court is affirmed.

Affirmed.