**Raymond WRIGHT and Eva Wright, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 16981.**

United States Court of Appeals Seventh Circuit.

Dec. 10, 1968.

John C. Eldridge, Leonard Schaitman, Dept. of Justice, Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., Alfred W. Moellering, U. S. Atty., South Bend, Ind., for defendant-appellee.

Before SWYGERT, CUMMINGS and KERNER, Circuit Judges.

SWYGERT, Circuit Judge.

The plaintiffs filed their action under the Federal Tort Claims Act to recover damages for injuries which the plaintiff, Raymond Wright, received on March 1, 1965 as a result of the explosion of a pipe while he was cutting it with an acetylene torch. The pipe, located in the Kingsbury Ordnance Plant, La Porte, Indiana, had been used to carry high explosive powder; at the time of the accident there was a residue of powder in the pipe. The plaintiff, Eva Wright, asks damages for the loss of her injured husband's services and consortium.

On cross-motions for summary judgment, the district court ruled that the United States was absolved from liability. This is an appeal from that judgment.

The plaintiffs' action also named the Kingsbury Industrial and Development Corporation and the R. B. Company as defendants. The district court dismissed the action against Kingsbury Industrial for lack of diversity jurisdiction. This appeal does not question the correctness of that ruling. R. B. Company was never served with process.

The undisputed facts show that the United States determined that the Kingsbury Ordnance Plant was surplus property and that the plant should be sold by the General Services Administration through public bidding. The invitations for bids contained the information that the buildings and parcels of land which were the subject of the sale "may be contaminated with the remains of various explosives" and that the successful bidder would be required to execute a "hold harmless agreement and accept such * * * covenants in the conveyance of title relating to the contamination as the Government deems appropriate."

David L. Matthews, Robert D. Lee, South Bend, Ind., for plaintiffs-appellants.

Kingsbury Industrial was the successful bidder for the parcel of land on which the plaintiff, Raymond Wright, was injured. The deed executed by the Government to Kingsbury Industrial contained a provision whereby the grantee agreed to decontaminate the buildings on the purchased land and the surrounding area, "such decontamination to be accomplished by Grantee under the supervision of the U. S. Army Ammunition Procurement and Supply Agency, and the cost of which supervision Grantee covenants and agrees to pay."

After Kingsbury Industrial bought the land in question, it entered into an agreement with R. B. Company for the purchase and removal by the latter of certain personal property located on the parcel. The plaintiff, Raymond Wright, was employed by R. B. Company at the time of the accident.

In spite of the fact that Kingsbury Industrial had agreed when it purchased the land to effect decontamination of the facilities located thereon under Government supervision, the U. S. Army Ammunition Procurement and Supply Agency, although responsible for the supervision, was never requested to do any supervision and, in fact, had no knowledge that any salvage and decontamination activities were being conducted by Kingsbury Industrial through its contractor, R. B. Company.

Kingsbury Industrial asserts it had no "actual knowledge" that the premises on which Wright was working were contaminated with explosives, but "because this was part of a powder line, [it] suspected that there was powder residue in the powder line pipes." This assertion is contradicted by the facts since, as indicated before, the Government had informed Kingsbury Industrial that the building in which Wright was working at the time he was hurt might be contaminated with the remains of explosives.

■ The United States is liable under the Federal Tort Claims Act only for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Liability under the Act "does not arise by virtue either of United States ownership of an 'inherently dangerous commodity' or property, or of engaging in an 'extra-hazardous' activity." Dalehite v. United States, 346 U.S. 15, 45, 73 S.Ct. 956, 972, 97 L.Ed. 1427 (1953). Consequently, the plaintiffs cannot recover under their theory of strict liability.

■ In addition, the plaintiffs claim that Kingsbury Industrial was an independent contractor and therefore liability should be imposed on the United States by reason of section 427A of the Restatement of Torts, Second.[1] This contention is without substance. Kingsbury Industrial was not an independent contractor; rather, it was simply a buyer of land for whose actions the United States was in no way responsible. Moreover, assuming that Kingsbury Industrial occupied the status of an independent contractor, the United States is not responsible under the Federal Tort Claims Act for the torts committed by its independent contractors, since they are not employees of the Government. United States v. Page, 350 F.2d 28 (10th Cir. 1965), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966).

■ The plaintiffs also urge that the United States is liable because in "retaining control" of the supervision over the decontamination, the Government had a duty to so supervise and a "corresponding liability for the breach of that duty." The record shows conclusively, however, that the United States never attempted to supervise the decontamination of the building in question nor was it ever requested to undertake

---

1. Restatement of Torts, Second, § 427A reads:
   One who employs an independent contractor to do work which the employer knows or has reason to know to involve an abnormally dangerous activity, is subject to liability to the same extent as the contractor for physical harm to others caused by the activity.

such supervision. The United States was not even notified about the salvaging activities of the R. B. Company. Moreover, in a situation where the Government reserves the right to inspect the work of an independent contractor, including the taking of proper safety precautions, and actually engages in such inspection, the Government does not assume the duty to provide safe working conditions. United States v. Page, 350 F.2d at 30–31; Kirk v. United States, 270 F.2d 110, 116–118 (9th Cir. 1959).

Finally, no liability may be imposed upon the United States by virtue of section 353 of the Restatement of Torts, Second.[2] A vendor is only liable under that section if he "conceals or fails to disclose to his vendee" the existence of a dangerous condition on the land which has been transferred, and if the vendor "has reason to believe that the vendee will not discover the condition or realize the risk." Even if a federal court were to follow the rule delineated in section 353, the prerequisites of liability thereunder do not exist in this case. We are in full agreement with the district judge's statement in that regard: "Upon the undisputed facts brought out on defendant's motion for summary judgment, it is clear that the application of this theory could not result in a finding of liability, for the grantee-vendee not only had a reasonable time in which to discover the condition and to take precautions but also from the beginning was put on notice of the possible dangerous conditions."

The judgment of the district court is affirmed.

---

2. Restatement of Torts, Second, § 353 reads:

   Undisclosed Dangerous Conditions Known to Vendor

   (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

   (a) the vendee does not know or have reason to know of the condition or the risk involved, and

   (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

   (2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.