Michael THOMPSON, Plaintiff,

v.

TIMPANOGOS METALS, a Utah corporation; United States of America and its Agents; United States Army Corps of Engineers, and Does I–X; XYZ Corporations I–X, Defendants.

UNITED STATES of America, Third–Party Plaintiff,

v.

TIMPANOGOS METALS, INC., Third–Party Defendant.

No. 89–C–0492A.

United States District Court, D. Utah, C.D.

May 2, 1991.

As Amended May 23, 1991.

C. Richard Henriksen, Jr., David W. Parker, Henriksen, Henriksen & Call, Salt Lake City, Utah, for plaintiff.

Robert H. Henderson, Snow, Christensen & Martineau, Salt Lake City, Utah, for defendant Timpanogos Metals.

Stephen J. Sorenson, Asst. U.S. Atty., Salt Lake City, Utah, for U.S.A. Army Corps of Engineers.

## AMENDED ORDER

ALDON J. ANDERSON, Senior District Judge.

The above-captioned case is now before the court on Defendant United States Government's motion for summary judgment. The Government contends it is entitled to judgment because it cannot be held liable for Plaintiff's injuries as a matter of law. The Government asserts it did not exercise any control over the independent contractor whose actions caused the injury. For this reason, the Government argues, it is protected under the Federal Tort Claims Act. Having reviewed the parties' memoranda, considered the arguments presented at hearing, and scrutinized relevant law, the court is prepared to rule.

## I. BACKGROUND

The dispute in this suit revolves around the transportation and installation of a large steel door at Hill Air Force Base. The door was not designed, manufactured, altered, handled, nor transported by the Government. The Government left responsibility for safety and the construction process to the general contractor, Gramoll Construction Co., by express written contract. Contract at ¶ 55(a), Exhibit to file doc. no. 50. By contract, the Government reserved to itself only the authority to inspect. *Id.* at ¶ 61. In actual practice, the Government's inspector directed the contractor to comply with safety requirements and the contract specifications at various times during the project. The Plaintiff asserts that this reservation of authority coupled with the actions of the inspector created a duty requiring the Government to supervise the contractors.

The parties do not disagree over the essential facts in the case. The construction site was at Hill Air Force Base. The Government contracted with Gramoll to provide ammunition storage igloos built to Government specifications. Gramoll Construction was an independent contractor for the Government with the authority to enter subcontracts. All construction personnel working at the site were employees of the independent contractor, Gramoll Construction Co., or its subcontractors.

The Government had an inspector at the construction site between three and five times per week. The inspector noted errors in the construction process and breaches of safety regulations. The Government had the authority to require the contractor to submit a job hazard analysis on particular procedures if the inspector so desired. No such hazard analysis was either requested or prepared for the procedures that resulted in the accident giving rise to this suit.

As part of the contract, Gramoll had to supply and install large steel doors. Gramoll subcontracted with Timpanogos Metals, Inc. for the fabrication of the doors. When the doors arrived at the construction site they were equipped with steel eyelets that were not required by the Government specifications. On April 7, 1987, workers strung cable through the eyelets and lifted a door vertically off the ground using a backhoe. The workers then transported the door to an igloo and installed it and a

second door using the same procedure. The Government inspector was not present during this initial transportation and installation, nor had he been consulted about it.

On May 8, 1987, workers were again transporting an igloo door by using the eyelets and cable to suspend it from a backhoe. The accident occurred during this process. The Government inspector was on the construction site that day but was not aware that the installation was to take place. Neither had the inspector approved the procedure of carrying the heavy doors by the eyelets. The inspector did, however, see the backhoe carrying a door pass by the window of an office he was occupying. The inspector questioned a nearby representative of the independent contractor that was supplying the doors about the door hanging from the backhoe. A short time later, the Plaintiff was injured in the accident.

## II. DISCUSSION

Plaintiff does not dispute that the Government is not generally liable for the actions of its independent contractor. Nor does Plaintiff dispute that the relationship between Gramoll Construction and the Government was one of independent contractor-owner. Plaintiff argues that the Government's instructions to the contractor in conjunction with the Government's contract authority constituted the exercise of control over the general contractor. Plaintiff contends this exercise of control was sufficient to impose on the Government a limited duty to supervise the contractor for safety. Plaintiff asserts the Government breached this duty, thereby becoming a cause of Plaintiff's injury. The Government argues that it is not liable for the actions of independent contractors and did not exercise sufficient control over the contractor to create a duty to supervise.

■ The published cases on this issue speak with substantial agreement. The reservation by the Government of the right to inspect, make safety requirements, and stop work is not sufficient to pierce the general veil of sovereign immunity. *E.g., United States v. Page*, 350 F.2d 28, 31 (10th Cir.1965) *cert. denied* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (requirements of government safety program do not constitute control and create no liability for failure to enforce safety rules). *See, e.g., Russell v. United States*, 763 F.2d 786, 787 (10th Cir.1985) (negligently conducted mine inspections are discretionary function and not actionable); *Flynn v. United States*, 631 F.2d 678 680–81 (10th Cir.1980) (for Government to be liable under similar theory of liability, it "must have retained some degree of control over the manner in which the work is to be done.... The general right to inspect and make safety requirements is not enough." "The existence of a safety program does not create liability when the contractor, as here, is primarily responsible for safety"); *Wright v. United States*, 568 F.2d 153, 159 (10th Cir.1977) (Government cannot be held liable for choosing bridge design or assisting state in constructing bridge that later failed); *Craghead v. United States*, 423 F.2d 664, 666 (10th Cir.1970) (insufficient control over independent contractor demonstrated to impose liability on Government); *Irzyk v. United States*, 412 F.2d 749, 751 (10th Cir.1969) (safety requirements and inspections by Government inspector are not sufficient to make Government liable for injury due to independent contractor's negligence); *Eutsler v. United States*, 376 F.2d 634, 636 (10th Cir.1967) (Government's failure to enforce safety regulations, even though regarding inherently dangerous activity, does not create liability); *Hamman v. United States*, 267 F.Supp. 411, 417–18 (D.Mont.1967) (Government reservation of right to inspect, approve plans, and remove any employee did not constitute sufficient control over independent contractor to create liability).

At the hearing, Plaintiff asserted a single case as being the best factual precedent directly on point to stand against the Tenth Circuit cases noted. Plaintiff relied on the persuasiveness of *Barron v. United States*, 473 F.Supp. 1077 (D.Haw.1979), *aff'd in part, rev'd in part on other grounds*, 654 F.2d 644 (9th Cir.1981), out of the District Court in Hawaii. The *Barron* decision, however, is substantially different

from the case now before the court in several significant respects. First and foremost, the contract in *Barron* expressly provided, "[t]he work will be conducted under the general direction of the Contracting Officer [a government employee]." *Id.* at 1083. The root of the Government's immunity argument in this case is that the builder was an independent contractor. Where the Government reserves general control over the project as in *Barron*, the theories of liability are significantly different than the independent contractor situation presented to the court in this case.

■ The second material difference between *Barron* and the current case is that the *Barron* contract involved the performance of an ultrahazardous activity. *Id.* at 1083. Performance of an ultrahazardous activity requires the application of nondelegable duty law. Liability based on the hiring of an independent contractor to perform an ultrahazardous activity is based upon policies and legal principles that are inapplicable to the standard owner-independent contractor relationship now presented to the court.

Third, by the time the accident occurred, the Government in *Barron* was aware of the independent contractor's lengthy record of following patently hazardous practices. *Id.* at 1084. No such record of Government toleration of flagrant safety violations is present in this case.

Fourth, various representatives of the Government were intimately involved in the management and daily activity of the *Barron* construction project. *Id.* at 1083–84. As mentioned above, the contract involved in our case expressly left day-to-day control of the project to the contractor. Additionally, government representatives exercised little control over the project in actual practice.

■ Based on these differences, the court does not find the *Barron* decision persuasive in this action.[1] In the present suit, the Government merely retained the right to inspect and make safety requirements. Contract at ¶¶ 55, 61, Exhibit to file doc. no. 50. The Government exercised this authority by sending an inspector to the site three to five times a week. Defendant's Memorandum at ¶¶ 5, 6. The inspector issued various, often trivial, safety instructions to the general contractor. *See* Plaintiff's Response at ¶ 9.

This court does, however, find the Tenth Circuit opinion in *United States v. Page*, 350 F.2d 28 (10th Cir.1965), persuasive. In *Page*, the parties had created a contractual relationship similar to the one now before the court in all material aspects. *Id.* at 29–31. The plaintiff argued in *Page*, as here, that the Government was under a duty to supervise safety of the independent contractor because of the contractual powers reserved and actions of the Government. In *Page*, the trial court ruled in favor of the plaintiff. The Tenth Circuit overturned the trial court's ruling. Under similar facts, our circuit ruled against the

---

1. After the hearing on the Government's motion for summary judgment, this court observed that neither party had submitted proper evidence of the relevant contract provisions. This court, therefore, requested that the parties submit copies of these provisions. In addition to complying with the court's request, Plaintiff seized the opportunity to present the progeny generated by the *Barron* decision. Despite the questionable manner of submission, this court carefully reviewed the decisions proffered by Plaintiff. This court finds that all the decisions submitted differ from the current suit on significant points and are unpersuasive. *See McMichael v. United States*, 751 F.2d 303 (8th Cir.1985) (most closely analogous of cited cases but involved comprehensive mandatory regulations of Government's duty, a different theory of liability, and an inherently dangerous activity); *Madison v. United*

*States*, 679 F.2d 736 (8th Cir.1982) (contractor hired to perform ultrahazardous activity); *Neal v. Bergland*, 646 F.2d 1178 (6th Cir.1981) *aff'd* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) (case involved statutory duty and Congressional intent that Government supervise independent contractor).

Additionally, two of these three cases were based on a state law based theory of liability (ultrahazardous activities/nondelegable duty). In this case, neither party has cited any state law to this court. No argument made to this court asserts that a Utah law based theory of liability is applicable to the facts before the court. For these reasons, the Tenth Circuit cases cited previously herein are the controlling precedent in this circuit on the facts now before the court.

 

very theory now proposed by plaintiff. *Id.* at 31.

The court also finds an early foundation case from the Ninth Circuit persuasive. In *Kirk v. United States,* 270 F.2d 110 (9th Cir.1956), the circuit reviewed facts in which an independent contractor's employee working on a dam for the United States was injured. The employee fell into a river from the scaffold on which he was working. The plaintiff argued that the Government was negligent in failing to enforce safety regulations and not more carefully inspecting the scaffolding and the work procedures used on it. In affirming a judgment in the Government's favor, the court stated:

> The fact that the United States retained the right to inspect the work under construction to see that the provisions of the contract were carried out and also retained the right to stop work if they were not is not sufficient in itself to make the United States liable for damage resulting from negligence of the contractors in their performance of the contract.

*Id.* at 116–17 (citations omitted).

## III.  CONCLUSION

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, the dispute over any material facts must be genuine. In other words, the party opposing a motion for summary judgment must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor. Plaintiff has failed to produce any evidence that could support a conclusion by the court that the Government exercised day-to-day *control* over the safety of the construction project. The Government did not, by its actions, undertake any affirmative duty to supervise safety at the site. Plaintiff has not presented evidence that the Government did anything but express routine concerns for adhering to safety regulations and contract compliance.

Defendant Government's motion for summary judgment is, therefore, granted.

IT IS SO ORDERED.