**STRANGI et al.**

v.

**UNITED STATES et al.**

No. 14778.

United States Court of Appeals
Fifth Circuit.

March 12, 1954.

R. B. Cousins, III, Dallas, Tex., John F. Sheehy, Waco, Tex., for appellants, Thompson & Coe, Dallas, Tex., Richey, Sheehy & Teeling, Waco, Tex., of counsel.

Herman Greitzer, Atty. Dept. of Justice, Paul A. Sweeney, Atty. Dept. of Justice, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., Charles F. Herring, U. S. Atty., San Antonio, Tex., Frank M. Wilson, Waco, Tex., for appellees, Scott, Wilson & Cureton, Waco, Tex., of counsel.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

In the district court five civil actions under the Federal Tort Claims Act[1] were, by agreement, consolidated for trial upon the issue of liability *vel non* of the United States, with the further understanding that, if the United States were held liable, separate hearings would be had to ascertain the damages to each plaintiff. The cases are likewise consolidated upon appeal. The district court entered findings of fact and conclusions of law,[2] and rendered judgment against the plaintiffs.

The United States, in compliance with statutory authority,[3] was constructing the Whitney Dam and Reservoir on the Brazos River. It entered into a written contract with J. B. Mayfield to clear some of the brush, timber and trees from the reservoir area. Mayfield, in accordance with the contract, burned the brush and timber which he cleared. Because of a long drought, the area surrounding Lake Whitney was extremely dry. On Sunday, September 2, 1951, a fire originating on the border of the reservoir area burned over the land of the appellants destroying their properties.

Appellants' primary insistance is that J. B. Mayfield was an employee of the United States rather than an independent contractor. They rely upon the terms of the written contract vesting in the United States to a large measure the right of supervision and control of the work, the right to decide disputes or disagreements arising under the contract or specifications; the contract further containing provisions that all material and workmanship were subject to inspection and approval, that certain wage rates were to be paid, that an eight-hour day for laborers was to be observed, that there was to be no discrimination as to race, creed or color in the hiring or firing of laborers, that the contractor was to comply with the "Manual of Safety Requirements" of the Chief of Engineers, that the work might be terminated by the Government "whenever the contracting officer shall determine that such termination is in the best interest of the Government"; and upon various provisions in the specifications in accordance with which the work was to be performed, especially the provision as to "Burning" copied in the footnote.[4]

I. 28 U.S.C.A. §§ 1346(b), 1402, 1504, 2110, 2401, 2402, and 2671–2680.

2. "Findings of Fact

"(1) The evidence adduced by plaintiffs is not sufficient to show negligence on the part of the United States of America proximately causing damages to either or all of the plaintiffs.

"(2) The fires in question in these actions occurring in September, 1951, in the Whitney Dam Reservoir Area, which caused damage to plaintiffs herein, were proximately caused by the negligence of the third party defendant, J. B. Mayfield.

"Conclusions of Law

"(1) The evidence adduced by plaintiffs in these cases is insufficient to establish negligence on the part of the United States of America.

"(2) The third party defendant, J. B. Mayfield, was not an agent or employee of the United States of America during any of the times involved in these consolidated actions, but was an independent contractor.

"(3) The third party defendant, J. B. Mayfield, was a 'contractor' within the

meaning of Title 28, Section 2671, United States Code, at all times pertinent to the above consolidated cases, and was not an 'employee of the Government' under such section.

"(4) No affirmative relief was sought by either of the plaintiffs against the third party defendant, J. B. Mayfield, and neither of the plaintiffs is entitled to a judgment against him for that reason.

"(5) The defendant, the United States of America, is entitled to a judgment that plaintiffs and each of them take nothing by their action, and that the United States of America recover all costs herein expended."

3. Public Law 228, 77th Cong., 1st Session, 55 Stat. 638, and Public Law 534, 78th Cong., 2nd Session, 58 Stat. 887.

4. *"Burning.*—Cleared materials may be disposed of by burning. However, all burning will be subject to all public laws governing such operations. The contractor shall have available at all times, for use in preventing and suppressing fires, a suitable supply of axes, saws, mattocks, shovels, and sacking material that

Appellees reply that the contract is a standard form Government contract differing only in minor respects, as permitted by regulation (32 C.F.R.1951 Revision Sec. 596.001), from the standard form construction contract prescribed for use by the Department of the Army in 32 C.F.R.1951 Revision Sec. 596.531–1; that similar standard form contracts are also required to be used by the General Services Administration, 41 U.S.C.A.Appendix, Sec. 54.13, and by the entire defense establishment (Armed Forces Procurement Regulation, 32 C.F.R.1951 Revision Secs. 400.100 et seq.); that the contents of a standard form contract are largely governed by express Congressional command, with the result that many of the clauses contained in the contract are clauses which Congress has directed to be included (see the discussion of standard form contract clauses contained in 32 C.F.R.1951 Revision Secs. 406.000–413.008); that labor policies, including provisions concerning convict labor, working hours, minimum wages, kickbacks, child labor, and working conditions, are governed by a number of Congressional enactments,[5] and the use of an anti-discrimination clause is directed by Executive Order;[6]

that the same considerations governed the inclusion of many other contract provisions;[7] that the Government's option to terminate is in accord with the procedure outlined by Congress for the termination of war contracts,[8] and is a right the Government must necessarily reserve to itself where Congress may decide to withhold further funds, or the national interest may compel the employment of funds and manpower in some other way.

The appellees insist further that Mayfield employed his own help,[9] furnished his own material and appliances, was doing the work as the best bidder and in pursuance of his calling as a general contractor, was to be paid in a lump sum for the specific job, and was to be penalized for delay in completing the work.

■■ It seems to us that no particular one of the matters insisted upon by the appellants or by the appellees is in itself controlling. The distinction between the master-servant and independent contractor relationship lies largely in the degree of control or right of control retained by the employer over the details of the work as it is being performed, but there is no definite and absolute rule.[10] Considering the "total sit-

can be wetted. The contractor shall be responsible for any damage to life and/or property resulting from fires that are started by his operations or employees. The time, location, and manner of burning shall be subject to approval. Fires shall be guarded at all times and shall be under constant attendance until they have burned out or have been extinguished. Burning shall be so thorough that the materials will be reduced to ashes, except that occasional charred pieces of logs or branches not exceeding 4 inches in diameter and 8 feet in length will be permitted to remain. Piling and burning shall be carried out in such manner as to minimize danger to standing trees."

5. 18 U.S.C.A. § 436 (use of convict labor); Eight-Hour Law, 40 U.S.C.A. §§ 321, 324–326; Davis-Bacon Act, 40 U.S. C.A. § 276a (minimum wages); Copeland Anti-Kickback Act, 18 U.S.C.A. Sec. 874 and 40 U.S.C.A. § 276c; Walsh-Healey Public Contracts Act, 41 U.S.C.A. §§ 35–45 (minimum wages, maximum hours,

child labor, convict labor, working conditions); the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219 (wages and hour standards and child labor). See also the Portal to Portal Pay Act, 29 U.S.C.A., Secs. 216, 251–262.

6. Executive Order No. 9346, May 27, 1943, U. S. Code Congressional Service 1943, p. 546, 3 C.F.R. 1943 Cumm.Supp., p. 1280.

7. See 41 U.S.C.A. §§ 10a–10d (the Buy American Act); 41 U.S.C.A. § 22 and 153; 50 U.S.C.A.App. 1214, 2071 et seq. and 2101 et seq.

8. 41 U.S.C.A. § 101 et seq.

9. "I had approximately seventy-five men working there."

10. "In determining whether one action for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

uation",[11] we are of the clear opinion that Mayfield was an independent contractor and not an employee of the United States. Cf. Powell v. United States Cartridge Co., 339 U.S. 497, 506, 507, 70 S.Ct. 755, 94 L.Ed. 1017.

■ The Federal Tort Claims Act covers claims for damages only when "caused by the negligent or wrongful act or omission of any employee of the Government * * *", 28 U.S.C.A. § 1346(b). See Dalehite v. United States, 346 U.S. 15, 44, 73 S.Ct. 956, 97 L.Ed. 1427; In re Texas City Disaster Litigation, 5 Cir., 197 F.2d 771, 775, 776. Mayfield not being an employee of the Government, the United States is not responsible for his negligence.

■ Appellants next insist that, independent of any acts of negligence on the part of Mayfield, the district court erred in holding that the direct employees of the Government were not guilty of negligence proximately causing the appellants' damages. The Second Circuit, through Judge Augustus Hand, has recently stated that:

"Where power is reserved by one who has hired an independent contractor to direct or control the contractor, an affirmative duty arises to exercise that power with reasonable care. Restatement, Torts § 414. The duty is necessarily co-extensive with the power." Gallagher v. United States Lines Co., 206 F.2d 177, 179.

See also, 23 Tex.Jur., Independent Contractors, Sec. 18, p. 564; cf. 27 Am.Jur., Independent Contractors, Sec. 35, p. 513. We need not, however, pass upon that question of law; for assuming it to be sound and applicable below to the present case, the district court's finding of fact was broad enough to comprehend such a rule, and that finding was certainly not clearly erroneous. Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ Lastly, the appellants argue that, regardless of the status of Mayfield, the United States is liable to them because the use of fire, under the circumstances here in question, was an extrahazardous or inherently dangerous instrumentality. See 27 Am.Jur., Independent Contractors, Sec. 39. It may be seriously doubted whether fire can be regarded as a dangerous instrumentality within the meaning of that rule. See Pfeiffer v. Aue, 53 Tex.Civ.App. 98, 115 S.W. 300, 301. Whether so or not, liability would not be fastened on the United States because (a) the district court has found as a fact that the evidence was insufficient to establish negligence on the part of the United States, thus negativing the breach of any duty to supervise the work because damage to others is likely to occur unless the work is properly performed; and (b) any "slight residue of theory of absolute liability without fault" was disposed of in Dalehite v. United States, supra, see

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer; and

"(i) whether or not the parties believe they are creating the relationship of master and servant."

A.L.I. Restatement, Agency, Sec. 220 (2); See also 27 Am.Jur., Independent Contractors, Sec. 5, p. 485.

11. In United States v. Silk, 331 U.S. 704, 719, 67 S.Ct. 1463, 1471, 91 L.Ed. 1757, the Supreme Court stated: "It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors."

opinion 346 U.S. at pages 44 and 45, 73 S.Ct. at page 972.

We construe the judgment to be without prejudice as to any subsequent actions of the appellants, plaintiffs below, against J. B. Mayfield. So construed, the judgment is

Affirmed.