**MOTORS INSURANCE CORPORATION, a New York Corporation, Plaintiff,**

v.

**AVIATION SPECIALTIES, INC., an Arizona Corporation, Defendant and Third-Party Plaintiff,**

v.

**The UNITED STATES of America, Third-Party Defendant.**

No. 5644.

United States District Court
W. D. Michigan, S. D.
Sept. 22, 1969.

■■■■■■■■■■■■■■■■■■■■■■■■

Rhoades, McKee & Boer, Grand Rapids, Mich., F. William McKee, Grand Rapids, Mich., of counsel, for plaintiff.

Smith, Haughey & Rice, Grand Rapids, Mich., L. Roland Roegge, Grand Rapids, Mich., of counsel, for third party plaintiff and defendant.

Eugene Hamilton, Dept. of Justice, Washington, D. C., for third party defendant.

## OPINION.

FOX, District Judge.

### FINDINGS OF FACT

*As to defendant Aviation Specialties, Inc.:*

(1) Employees of defendant Aviation knew before May 4, 1966 that Malathion spray was harmful to certain auto finishes. Both defendant's president and its pilot so testified.

(2) The same testimony indicated that these employees knew of precautions taken to avoid such damage. They knew the United States Department of Agriculture marked off "sensitive areas" within a spray block and instructed pilots to avoid such an area by one quarter to one half mile. They also knew that concentrations of automobiles within a spray area had been so classified.

(3) Defendant Aviation's pilot knew, from aerial observation, of the presence of Vandenberg Motors before applying spray in its vicinity. He knew that Vandenberg Motors was located within 400 feet of the northern boundary of spray area 21.

(4) Defendant Aviation's pilot had been instructed to apply spray directly only within the boundaries of spray area 21.

(5) Defendant Aviation's employees knew that the spray as applied would, with variable wind conditions, almost certainly drift as far as Vandenberg Motors.

(6) A skilled pilot such as defendant Aviation's could in the exercise of reasonable care turn his spray on or off within 200 feet of an area boundary.

(7) On May 4, 1966, Aviation's pilot applied spray both on the boundary of block 21 and directly over Vandenberg Motors. Three eyewitnesses testified that the plane passed directly over the Vandenberg property discharging spray. There was no evidence that there was a malfunction in the aircraft systems. Although Aviation's pilot testified to the contrary, the court finds that, on a southbound pass, spray was released more than 400 feet north of the area 21 boundary.

*As to defendant United States:*

(1) Employees of the United States Department of Agriculture knew that Malathion spray was harmful to certain auto finishes.

(2) Employees of the United States Department of Agriculture knew of the danger of drift and as a precaution designated "sensitive areas" within a spray area and instructed pilots to avoid these from one quarter to a half mile. Concentrations of autos within a spray area were so designated.

(3) Employees of the United States Department of Agriculture and the Michigan Department of Agriculture made no effort to designate sensitive areas immediately adjacent to a spray area, or to warn adjacent property owners of spraying operations.

(4) Mr. Lindy, United States Department of Agriculture employee in charge of local operations in block 21, knew that Vandenberg Motors was located immediately adjacent to block 21.

(5) Employees of the United States Department of Agriculture had no effective means of communication with spray aircraft. There was no radio communication. The pilot could not contact the ground with reference to a hazard he might see, nor could his supervisor contact him. The kytoon crew could signal the pilot to cease spraying but were too occupied with raising and lowering the kytoon to be alert for sensitive areas. There was no direct communication between the supervisor, Mr. Lindy, and the crew.

(6) On May 4, 1966, the United States Department of Agriculture employees instructed Aviation's pilot to apply spray in an area within 400 feet of Vandenberg Motors. The morning briefing and map given the pilot did not indicate that the Vandenberg property was a sensitive area.

(7) Testimony of both defendants indicates that employees of the United States Department of Agriculture had complete supervisory authority over employees of Aviation Specialties. The latter were told to take their instructions only from the United States Department of Agriculture employees, who provided daily briefings and detailed maps indicating what was to be sprayed. United States Department of Agriculture crews operated the kytoons, which were the only means of communication between the ground and the pilot. These crews were responsible only to Mr. Lindy, the United States Department of Agriculture supervisor. The pilot's only function was to fly as instructed and directed by the United States Department of Agricul-

ture. Speed, altitude and swath width were determined by United States Department of Agriculture employees. The government alone decided when to fly and when not to fly.

*As to Vandenberg Motors:*

(1) Employees of Vandenberg Motors had no warning that spray operations would be carried out in such a manner as to endanger their automobiles.

(2) Employees of Vandenberg Motors, as quickly as possible after apprehending damage, made effort to minimize harm from the spray.

(3) A total of 61 automobiles were damaged by Malathion spray. Cost of repair, $11,881.72, was paid by plaintiff Motors Insurance Corporation to Vandenberg Motors.

(4) The court also notes that plaintiff Motors Insurance took every effort to minimize the cost of repairs to the Vandenberg Motors autos. These efforts were consistent with their own expectation of bearing the burden of loss in this case. The estimate of damage was conservative and prudent in every respect. Cases cited by the United States to the contrary apply only to the particular facts of those cases, and are not in point here.

## CONCLUSIONS OF LAW

▉ (1) Defendants Aviation Specialties and the United States were, in the conduct of spray operations pursuant to United States Government contract, subject to a duty to use reasonable care under the circumstances to avoid harm to others. Vandenberg Motors was clearly within the scope of this duty, and the risk of the particular damage involved was clearly foreseeable to both defendants.

(2) Defendant Aviation breached this duty. With knowledge of the proximity of Vandenberg Motors and the likelihood of spray drift, its pilot continued to spray as directed. A prudent person with the knowledge the pilot had in this case would have sprayed so as to reasonably avoid risk of harm to the cars on the

Vandenberg property. This, in light of the facts found in this case, the pilot did not do. It is no defense to this breach of duty that such spraying had been ordered by employees of the United States. Aviation could not contract to be negligent.

Also, the court finds that defendant's pilot did not use reasonable care to apply the spray only within the spray area boundaries. A pilot of Mr. Knudsen's skill should have, under the circumstances, been able to avoid a direct application of spray to the Vandenberg property. Mr. Knudsen's testimony, as well as that of Aviation's president, Mr. Sellards, indicated that, under conditions existing in this case, a careful pilot could turn on his spray very close to an observed boundary. The northern boundary of block 21 was clearly visible to a pilot flying at 100 feet. However, three witnesses testified to seeing Knudsen's plane discharging spray over 400 feet north of the 28th Street boundary. This discharge could only result, in light of the testimony before the court, from the lack of due care on the part of the pilot.

■ (3) Defendant United States also breached its duty of care owed to Vandenberg Motors. A reasonable man would have realized the substantial risk of spray either drifting or directly falling upon autos concentrated less than 400 feet from the 28th Street boundary of spray area 21. Wind conditions or foreseeable pilot error could have this effect.

Reasonable efforts to lessen risks created by spray activities cannot be limited to the confines of the spray area. In similar circumstances within a spray zone, defendant United States used a one quarter to one half mile buffer zone to protect sensitive areas from spray damage. Here, United States Department of Agriculture employees failed to look for sensitive areas outside the designated spray zone or to warn adjacent property owners, and instructed the pilot to apply spray within 400 feet of Vandenberg Motors. The United States thus failed in its duty to persons outside the spray area in not taking precautions to avoid injury to their property.

■ The above negligent acts of defendant United States were clearly of an operational nature, and thus not subject to governmental immunity pursuant to 28 U.S.C.A. § 2680(a).

■ (4) The relationship between the United States and Aviation Specialties was that of employer-employee. United States Department of Agriculture employees had complete and exclusive control of Aviation's activities in the execution of the contract. This degree of control of the details of performance of the contract, which left only the actual flying of the aircraft in the hands of Aviation, is not consistent with the status of an independent contractor.

■ Whether Aviation was an employee of the United States is a question of federal law. Federal courts adopt the basic common law rules of respondeat superior in resolving this issue. Brucker v. United States, 338 F.2d 427 (9th Cir. 1964), United States v. Becker, 378 F.2d 319 (9th Cir. 1967).

■ To determine whether a person is an employee for purposes of vicarious liability, each case must be judged on its own facts. No single fact is determinative of the relationship; the total situation must be considered by the court.

The general rule in such cases is cited in Fisher v. United States, 356 F.2d 706 (6th Cir. 1966):

"If the right to control the manner or means of performing the work is in the person for whom the work is performed, the relationship is that of employer and employee or master and servant; but if the control of the manner or means of performing the work is delegated to the person performing the work, the relationship is that of independent contractor."

Federal courts also apply the criteria of the Restatement of Agency, § 220, to determine whether the employee-employer relationship exists. Strangi v. United States, 211 F.2d 305 (5th Cir. 1954), United States v. Becker, supra. This sec-

tion was also cited by the United States in its trial brief:

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Applying the above criteria,[1] the court finds that Aviation was subject to the

---

1. The application of these criteria by other federal courts is shown in the following cases:

(a) Fisher v. United States, 356 F.2d 706 (C.A. 6, 1966):

Plaintiff's decedent killed in collision between his car and a truck driven by employee of the holder of a "route contract" with U. S. Post Office for carrying of mail between points in Ohio. The truck was being driven pursuant to the contract at the time of the accident.

The district court held defendant contract holder to be an independent contractor. The Appeal Court affirmed, following the "control" test, but did not discuss its holding.

(b) United States v. Becker, 378 F.2d 319 (9th Cir. 1967):

Plaintiff's decedent was killed while riding as a passenger in an airplane being used, under contract, by the Forest Service of the United States Department of Agriculture. Plaintiff sued the United States and recovered. The United States appealed the finding that it was the "employer" of the airplane owner.

The Appeal Court upheld the lower court's finding that the airplane owner was an "employee" of the United States. It cited the Restatement criteria, and listed the following as important factors in this case. Factors militating against:

(1) The owner did not receive a salary from the Forest Service.
(2) He could refuse a call for the services of his plane.
(3) He was required to maintain and fuel the aircraft.
Factors in favor of employee relationship:
(1) Contract specified pilot's home base.
(2) It required him to meet United States Department of Agriculture standards re: himself and the plane.
(3) Contract was not entered into after competitive bidding.
(4) Received hourly compensation instead of a lump sum.
(5) He could not designate others to fly for the United States Department of Agriculture in his plane.
(6) Operated under "detailed control" of Forest Service:
    (i) minimum altitude;
    (ii) content of each flight: "where to go and what to do;"
    (iii) could terminate services for failure of owner to follow instructions.
(c) Strangi v. United States, 211 F.2d 305 (5th Cir. 1954):
Plaintiff's property was burned when a fire, set by government contractee, got out of control. Plaintiff sued the United States as the "employer." They lost in the district court and appealed.
The contract was to clear brush and trees from the reservoir area during the construction of Whitney Dam.

control of the United States with respect to the details of the performance of the contract. As such, and in consideration of all the circumstances, Aviation was an employee of the United States.

■ (5) The negligent act of Aviation was clearly within the scope of its employment with the United States.

■ (6) The act of Aviation's pilot in negligently applying spray to the vehicles at Vandenberg Motors was a direct and proximate cause of the damage to the plaintiff.

■ (7) The above negligence of the United States was also a proximate cause of the damage to Vandenberg's cars. It is clear that an injury can have more than one proximate cause. Any action which makes a substantial contribution to the resulting injury, regardless of other contributing causes, may be sufficient for proximate cause. Here, the effect of the government's negligence was not cut off by the intervening negligence of Aviation. This intervening conduct—the improper shutting on and off of spray valves at a spray area boundary—was clearly foreseeable to the United States, and as such, must be found to be within the scope of the risk created by the negligence of the United States Department of Agriculture.

The United States has cross-claimed for full indemnification from Aviation, based on paragraph L of Section IV of its contract:

"The Contractor will be responsible for any negligent or wrongful acts or omissions of the Contractor, his employees, agents or subcontractors and employees or agents of the subcontractor(s) incident to the performance of this contract. The Contractor will hold and save the Government

harmless from all liability for any death or damage to all persons (other than the liability of the Department of Agriculture employees directly engaged in performing work under this contract as provided under the Federal Employee's Compensation Act) or to real or personal property, including negligent use of spray material, which results from the operations of, or accident to, equipment furnished by the Contractor. The Contractor will not be responsible for any negligent or wrongful acts or omissions of the U. S. Department of Agriculture, its employees, the U. S. Department of Agriculture's Cooperators or their employees."

The above provision entitles the United States to indemnification for acts of negligence on the part of its contractor, Aviation. The contract expressly provides that Aviation would not be responsible for indemnifying the United States for damages arising out of the negligence of the United States.

Absent active negligence on the part of the United States, the above indemnity provision would operate to require reimbursement by Aviation for the entire amount of plaintiff's award in this case.

■ However, negligence of employees of the United States was one of the proximate causes of the damage to Vandenberg vehicles. The United States is not entitled to indemnity for its own negligence. Because the active negligence of the United States comingled with that of Aviation, the indemnity contract will entitle the United States to recover only half of the judgment in this case. See Union Pac. R. R. v. Bridal Veil Lumber Co., 219 F.2d 825 (9th Cir. 1955). This will leave each of the wrong-

The Appeal Court also found against the plaintiff, applying the Restatement, and discussed the following:

(1) The contract vested in the United States a large measure of supervision and control of the work, the right to inspect materials and to regulate hours of work and wage rates of contractor's employees.

(2) The contract provided that the burning of debris was to be subject to United States approval.
(3) The contract provided that contractor would hire his own help, furnish his own material.
(4) Contractee was doing work as the best bidder and would be paid a lump sum.

doers liable for half of $11,881.72 or $5,940.86 each.

Judgment will be entered accordingly.

The above findings of fact and conclusion of law are made in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.