**George M. WALTON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 177–197.**

United States District Court, S. D. Georgia, Augusta Division.

Feb. 14, 1980.

Ramon A. Silverman, William P. Franklin, Jr., Savannah, Ga., for plaintiff.

Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

BOWEN, District Judge.

> "Wilt thou with me share risk and toil?
> Wilt thou with me go forth to help the dead?"

From *Antigone* by Sophocles, Scene—Thebes, in front of the palace. The Harvard Classics translation (1909).

This bizarre tort claim case is involved with the Government's alleged loss of two burial vaults and their contents. After much consideration and reflection upon the evidence adduced at the non-jury trial, the following findings of fact are stated in narrative form in compliance with Federal Rule of Civil Procedure 52(a).

Katherine Verbena Walton, an infant, died in the year 1919 and was buried in a locally made brick and concrete vault. Her grave was located near the town of Ellenton, South Carolina. William M. Walton died in the year 1931 and was buried in a locally manufactured vault. His grave was also near the town of Ellenton, South Carolina. The infant Katherine Walton was the daughter of William M. Walton. The plaintiff George Walton is the brother of Katherine Walton and the son of William M. Walton. The vault containing the remains of Katherine Walton weighed approximately 1200 pounds and that containing the remains of William Walton weighed approximately 5000 pounds.

In the early 1950s, the entire town of Ellenton, South Carolina, was condemned, moved in part, and otherwise destroyed by the United States Government, acting through the United States Corps of Engineers, in conjunction with the development and construction of an extensive nuclear project of the Atomic Energy Commission known as the Savannah River Plant. During the relocation of the Ellenton residents, it was necessary for the Corps to plan, coordinate and contract for the disinterment and reinterment of hundreds of graves in the locality. The graves of Katherine and William Walton were among them.

After the affected cemeteries were located and mapped, a plan for the removal and relocation of the graves was prepared by Corps personnel. The project was conducted by the South Atlantic Division of the United States Army Corps of Engineers with the assistance of personnel from the Savannah district office. After the plan was prepared, it was approved by court order. The plan provided for the removal of the graves to sites provided by the Corps or, depending on the wishes of the next of kin, reinterment could be had at another location. If reinterment at a privately specified location was desired, the policies and regulations then in effect permitted an allowance of cost to the next of kin equal to the unit price for which the Corps had contracted for the removal of each grave.

When it was learned that the condemnation had occurred and that all local graves would be moved, the plaintiff and his mother first informed the Corps that they desired reinterment of the remains of Katherine and William Walton at an unspecified location at Thomson, Georgia. Later, because of family ties to the Augusta, Georgia, area, and because of their removal from Thomson, they informed the Corps of their wish that the remains be interred at Augusta, Georgia.

The condemnation and relocation of the Ellenton, South Carolina, area took place in the early 1950s. Some of the events upon which witnesses testified occurred over 25 years ago and many important dates cannot be exactly defined.

The plaintiff's mother was elderly. They were both quite concerned about the relocation of the graves of their family members. In January of 1954, plaintiff, knowing that he would need a location for the new graves of his father and sister, entered into a contract for the purchase of two four-grave lots at Westover Cemetery. The entry of this contract purchase was made in the books of Westover on February 2, 1954. The terms of the purchase contracts provided (in predictable language) that the cemetery could reclaim the two tracts if the time purchase obligations were not met strictly according to the agreed upon terms.

Plaintiff requested and received permission to be personally present when the graves of his sister and father were opened. He assisted in the opening of their graves in February of 1954. The best of his recollection is that this occurred in middle to late February of that year.

Although the contract between the Corps and its contractor provided for reinterment on the same day of disinterment, the late hour of the final disinterment and the unavailability of lifting equipment made it impossible to reinter the remains of his father and sister on the same day the graves were opened. The plaintiff's testimony first assigned the delay in reinterment to the contractor but later to the unprepared state of the cemetery lots which he had purchased for this use. The reason for the delay is not important. The delay in reinterment did not last for one day, or even a week. Rather, it lasted for a period of six to seven weeks. On the date of disinterment, the vaults containing the remains of plaintiff's father and sister were delivered to Elliott's Funeral Home in Augusta, Georgia. The proprietors of that establishment were friends of the plaintiff. While the vaults stayed at Elliott's, they were outside in the parking lot. Plaintiff had several discussions with Messrs. Elliott about the status of the vaults, one discussion being at Mr. Elliott's home where plaintiff and his wife were having supper. During the time the vaults stayed at Elliott's, plaintiff observed them "every other week" during his frequent visits to Augusta, Georgia.

At some time in the spring of 1954, perhaps April, plaintiff gave instructions to the then manager of Westover Cemetery for the burial of his father's and sister's vaults and remains. He gave specific instructions, in detail, because he and his mother did not want the vaults to be placed near trees because roots would damage them. There had already been some damage to the vaults by roots which the plaintiff had personally cut away with a hatchet on the date of disinterment. No instructions for reinterment were given to the United States Army Corps of Engineers by plaintiff, nor to the contractor. It is unclear how any instructions, other than those given to the cemetery manager, were given by Mr. Walton to anyone.

*This paragraph is not a finding of fact.* It is taken from testimony of the plaintiff which the court deems insufficient to support a finding. Plaintiff testified that, after giving his instructions to the cemetery manager, he got word from Mr. Elliott and from his mother that the reinterment had taken place at Westover Cemetery. He further testified that he and his mother, after lunch at the S & S Cafeteria, bought a potted plant and went to the cemetery to visit the graves. Plaintiff testified that he saw the soil on the cemetery lots he purchased had been disturbed and that this indicated that reinterment had taken place exactly according to his instructions. Plaintiff further testified that he visited and placed flowers on these assumed graves 12 to 15 times per year during his frequent visits to the Augusta, Georgia, area.

In 1962, the Westover Cemetery management informed the plaintiff that his contract to purchase the two four-grave lots was to be cancelled for nonpayment of his time purchase obligations. Two such letters were written by the cemetery management and received by the plaintiff. Additionally, a telephone call notice of the contract cancellation was made by Westover management to the plaintiff.

In 1962, one of the four-grave lots which the plaintiff had contracted to purchase was resold to another purchaser. One grave was used shortly thereafter and two subsequent burials occurred in that lot. The other lot, in which the plaintiff assumed that his father and sister were buried, was sold by Westover in 1963. No burials have taken place there.

Neither the plaintiff nor his mother placed any grave marker on the assumed site of the father's or the sister's grave.

Plaintiff's mother became seriously ill in 1975. Just prior to her death in that year, plaintiff contacted Westover management personnel to make arrangements for her burial. At that time, plaintiff was told by

a new and different manager that there was no record of the burial of either father or his sister, and that he did not own either lot. The assumed sites of the graves were probed by plaintiff and the cemetery manager. No graves were found. Plaintiff purchased another lot for the burial of his mother's remains and received a credit of the amounts paid to Westover on the purchase price of the lots purchased in 1954.

Plaintiff filed his administrative claim with the United States Army Corps of Engineers on the 4th day of January, 1977. That claim was denied by the Corps on the 16th day of June, 1977. The captioned case brought under the Federal Tort Claims Act, is grounded in the alleged negligence of the United States Army Corps of Engineers and was filed on the 9th day of December, 1977.

The plaintiff has been suffering from hypertension (elevated blood pressure) since 1975. The cause of this hypertension is a combination of stress, heredity, diet, and age. While plaintiff's condition of hypertension may have been aggravated in some way by the alleged inability to find the remains of his family members, it has also been aggravated by other problems within the family. The hypertension was not solely, necessarily, or directly caused by the facts of this case. Plaintiff's hypertension has been controlled by medication prescribed by his family physician.

In the construction of several large Federal projects in the Central Savannah River Area since 1950, the United States Army Corps of Engineers has planned, coordinated, and contracted for the relocation of several thousand graves. This case presents the only known loss of human remains occurring in these projects.

Plaintiff and his family evince strong family ties and attachment to their ancestry and heritage. Plaintiff's dedication to his family has not been solely of a genealogical nature. He has cared for his mother and other members of his family in admirable fashion. Plaintiff and his forebears are descended from a prominent, established line which includes the George Walton who signed the Declaration of Independence along with Button Gwinnett and Lyman Hall, also from the colony of Georgia.

The delay in reinterment of the remains of his family members was caused by the plaintiff as much as by anyone else. Whether or not the contractor failed to properly reinter the remains on the date of disinterment, plaintiff allowed them, at least by his acquiescence, to remain in the parking lot at the Elliott's Funeral Home for six to seven weeks. He knew where they were and was fully capable of objecting to or protesting such a delay. Plaintiff is a capable man and was a friend of Messrs. Elliott. By inference, the Court finds that the delay in reinterment was caused by plaintiff's request or acquiescence. To permit large, heavy, earth encrusted vaults to remain the parking lot of a local funeral home is unusual. Elliott's made no charge for this service. Absent any evidence to the contrary, the Court infers from the evidence adduced that this considerable accommodation was extended to plaintiff because of a friendly, social and distant family relationship to the Elliotts. There is no indication of any impropriety in the Corps of Engineers' handling of the removal of the remains prior to disinterment. The disinterment itself occurred to the satisfaction of the plaintiff and, with his assent [or perhaps at his request, although no such finding is made] the remains were transported to Elliott's. Negligence is a term, mixed of law and fact, which will be hereinafter treated; however, if negligence occurred on the part of the Government or its subcontractor in allowing such an inordinate delay prior to reinterment, then that negligence was obviously and blatantly practiced before the plaintiff's eyes for a seven-week period.

The Federal Bureau of Investigation and the United States Army Corps of Engineers have investigated. No one can find the vaults and their remains. They are lost and gone forever. One can only speculate as to their present location. One may hope that they repose peacefully in some sylvan spot.

Upon the foregoing findings of fact, the following conclusions of law are applied.

## I.

■ Plaintiff seeks to impose liability for the loss of the remains of his father and sister upon the United States under the procedures set forth for Federal Tort Claims as codified in 28 U.S.C. § 2671, *et seq.* As frequently quoted, the Government is liable ". . . in the same manner and to the same extent as a private individual under like circumstances . . ." See 28 U.S.C. § 2674. The loss of the vaults and the remains they contained occurred in Georgia. The plaintiff intended that these vaults were to be buried in Georgia and discovered their loss at a cemetery in Georgia while he was a resident of Georgia. The disinterment of the vaults occurred in South Carolina but no wrongful act or negligence allegedly occurred in that state. Thus, the parties agree and I conclude that the applicable state law is that of Georgia.

■ It is difficult to determine whether the plaintiff rests his case in contract or in tort. While he sues under the Federal Tort Claims Act and the complaint alleges negligence, frequent reference to contract documents, agreements in writing, and understandings of the plaintiff surfaced at the trial. Breach of contract may authorize a cause of action in tort when violation of a duty created by contract is accompanied by damage.[1] The allegations made by the plaintiff conceivably amount to such a tort, but any conclusion to that effect is rejected after careful review of the facts and the law.

The Plaintiff contends the wrongful or negligent acts by the Government in two particular ways. First, plaintiff says that the Government was negligent in failing to supervise the disinterment and reinterment of the remains of his relatives in the manner specified in a clause in the contract between the Corps of Engineers and its contractor.[2] Second, plaintiff asserts that the permission in writing signed by his mother which allowed the Government to transfer the remains, which permission was subsequently amended by his verbal instructions, created a duty upon the Government which was subsequently breached and which caused physical and mental harm to the plaintiff. It is true that there was a clause in the contract documents which stated that an inspector would accompany the contractor to determine whether the work was being satisfactorily performed. But, even if the Government failed to provide an inspector, does such failure give rise to a cause of action in the plaintiff? It is true that the Government agreed in the written permit to disinter and reinter the remains of the Walton family members at a place selected by the Waltons. It is obvious that the reinterment was not accomplished by the Government or its contractor in the desired manner. But, do these facts alone require a conclusion imposing liability upon the Government? To both of these questions, the answer is in the negative.

■ It should be noted here that in Georgia, negligence is defined generally as the absence of the exercise of ordinary care [or diligence]. *See* Ga.Code § 105–201. In the findings of fact, no determination has been made whether the plaintiff or defendant has failed to exercise ordinary care or diligence. The absence of such a finding is attributable to the evidence adduced at the trial, or the lack of it. The standard of proof used by a District Judge as trier of fact is a "preponderance of the evidence." The plaintiff retains the ultimate burden of

---

1. Ga.Code § 105–104 provides that "[p]rivate duties may arise from statute or flow from relations created by contract, express or implied. The violation of such specific duty, accompanied with damage, shall give a right of action." *See also Ellis v. Taylor,* 172 Ga. 830, 159 S.E. 266 (1931); *Frank Graham Co., Inc. v. Graham,* 90 Ga.App. 840, 84 S.E.2d 579 (1954).

2. This clause specifically states: *"GOVERNMENT SUPERVISION:* An authorized representative of the Department of the Army will accompany the successful bidder during the disinterring, transferring and reinterring of all bodies and the removal, transfer and re-erection of all monuments, headstones, gravestones, and grave markers, and this representative shall inspect the work as it is done in order to determine its acceptability to the Government. The presence of the aforementioned inspector will, in no case, relieve the contractor from liability under the contract."

proof. In this case the plaintiff has failed to show by a preponderance of the evidence any act or omission on the part of the Government which amounts to a failure to exercise ordinary care or diligence under the circumstances. Although it is not supported by a "preponderance of the evidence," the trier of fact in this case is left with a deep-seated suspicion that, if any party to this case failed to exercise ordinary care, it was the plaintiff who should have taken some immediate remedial action when he learned that the remains of his family were to be left in the Elliott's parking lot for such an extended period.

## II.

██ In the transfer of graves required during the construction of the Savannah River Plant, the Government utilized the services of a contractor. Georgia is consistent with the general rule that employers are not liable for the actions of their independent contractors. *See* Ga.Code § 105–501. When negligence occurs through an independent contractor, the Government is not liable under the Federal Tort Claims Act and Georgia law unless the wrongful or negligent act of the contractor falls within one of the statutory exceptions to this general rule.[3] Here, the facts have been examined to determine whether the Government has, within the purview of Ga.Code Section 105–502(5), retained the right to direct or control the time and manner of executing the work to such an extent as to create the relationship of master and servant between the Government and the contractor as opposed to that of the Government and an independent contractor. In determining whether one is an independent contractor or

a servant, the chief test lies in the terms of the contract which retain to the employer, or which delegate to the contractor, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity with the contract. If the employer retains such rights to control, it is immaterial whether the employer exercised such authority in actual practice. *Jones v. International Inventors, Inc. East*, 429 F.Supp. 119 (D.C. 1976).

██ I cannot conclude that the retention of the right to inspect disinterment and reinterment by the Government creates the relationship of master and servant, thus imputing the acts of the latter unto the former. The inspection clause states that an inspector will accompany the contractor to determine if the work *is acceptable to the Government*. For purposes of section 105–502(5), the question is whether this clause gives the right to control how the transfer was accomplished or whether it simply gives a right to see that the transfer does indeed occur. The reservation of a right to supervise work done under contract with the Government is not necessarily an indication that the employer is not an independent contractor. *Strangi v. U. S.*, 211 F.2d 305 (5 Cir. 1954). Indeed, the Government could well reserve the right of general supervision in order to assure that the contractor is fulfilling its obligations. Unless the Government actually takes over the obligations or directs the performance of the contract, the independent contractor's status does not change and the Government cannot be held vicariously liable. *Kropp v. Douglas Aircraft Co.*, 329 F.Supp. 447 (D.C.

---

**3.** Ga.Code § 105–502: The employer is liable for the negligence of the contractor—

(1) When the work is wrongful in itself, or, if done in the ordinary manner, would result in a nuisance; or

(2) If, according to previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed; or

(3) If the wrongful act is the violation of a duty imposed by express contract upon the employer; or

(4) If the wrongful act is the violation of a duty imposed by statute; or

(5) If the employer retains the right to direct or control the time and manner of executing the work, or interferes and assumes control, so as to create the relation of master and servant, or so that an injury results which is traceable to his interference; or

(6) If the employer ratifies the unauthorized wrong of the independent contractor.

1971). The Government's argument that the clause does not negate the status of the independent contractor is sound.

▓ Plaintiff contends that the Government assumed a duty to supervise which is not delegable, and that negligence may be imputed by way of two other exceptions included in section 105–502. One attempt to show a nondelegable duty involves the analogy of the transfer of grave sites to an ultrahazardous activity contemplated by section 105–502(4). Although the handling of the dead merits special care in view of the sanctity of the remains to living family members, *Blanchard v. Westview Cemetery, Inc.*, 133 Ga.App. 262, 211 S.E.2d 135 (1974), I cannot conclude that the transfer of a body is in "its nature dangerous to others however carefully performed."

▓ Plaintiff's other attempt to find a nondelegable duty has more strength, but not enough. Plaintiff contends that the *duty to inspect* is implicit in the *power to inspect*. Ga.Code Section 105–502(3) will impose liability upon an employer if its independent contractor's wrongful act is in violation of a duty imposed by express contract upon the employer. But, under this inspection clause, the Government owed no duty to the plaintiff. The right to inspect was expressly for *its own benefit.* If the inspection was intended to be solely for the benefit of the Government, then it cannot constitute a duty owed to the plaintiff. Any duty assumed by the Government under agreements with the plaintiff or his mother will be treated in this opinion.

### III.

▓ When the Government undertook condemnation of the site of the Savannah River Plant, it procured written permission from relatives of those buried there to transfer the grave sites. This authorization [4] gave "consent to the disinterment and removal, by duly authorized representatives of the United States of America, of the remains of the said deceased person(s), and all markers at the grave thereof, and to reinter said remains and to replace said markers as follows: Thomson, Georgia." The Government expressly stated that its representative would reinter the bodies. If such a statement creates a duty, then the failure to reinter would constitute an actionable breach under sections 105–104 and 105–502(3). However, assuming duty, breach, and even proximate cause, *arguendo*, still the Government is not liable because of the acts and omissions of the plaintiff.

The grave removal permit indicated that Thomson, Georgia, was to be the final resting place of plaintiff's relatives. Later, the Government was verbally notified that Augusta, Georgia, was the chosen gravesite. Accordingly, the vaults were delivered to Elliott's Funeral Home in Augusta.[5] There the vaults stayed in the parking lot for approximately six weeks. Plaintiff knew this. If a duty to reinter (at least within a reasonable time) is assumed, then plaintiff very definitely knew of the Government's breach of this duty. A parking lot is not a proper place for storage of human remains, especially for six weeks.

Ga.Code § 105–603 states that "[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." The Georgia courts have noted that the passage of time between discovery of a defendant's negligence, and

---

4. This permit was signed by plaintiff's mother, now deceased. Though this would indicate that any legally binding relations created by this paper would be between the Government and plaintiff's mother, the interest here is in human remains which are quasi-property. This gives the relatives of the deceased rights which the courts will protect. *See Rivers v.* *Greenwood Cemetery, Inc.*, 194 Ga. 524, 22 S.E.2d 134 (1942).

5. The contract also stated "should weather conditions or other circumstances, however, prevent re-burial the same day of disinterment, the bodies shall be transported to and kept in a mortuary until re-burial without additional cost to the Government."

its potential for injurious effect, will invoke the application of this statute. *Akridge v. Atlanta & West Point Railroad Co.*, 90 Ga. 232, 16 S.E. 81 (1892). While this knowledge on the part of the plaintiff does not cause 28 U.S.C. § 2401 to bar this action, it still should be considered in determining if the plaintiff exercised due diligence. Here the plaintiff partially created the circumstance of delay by requesting burial in Augusta. Although this may not be consent to the failure to reinter, the fact remains that the plaintiff knew that no one had moved the vaults for at least six weeks. By allowing a breach of duty to occur and contributing to the potential for injury, plaintiff cannot recover for the negligence of another. Plaintiff here would be equally chargeable with any negligence which occurred. This bars recovery in Georgia.

■ Georgia is a state which permits the comparison of any negligence on the part of the plaintiff to that of the defendant. Of course, both the negligence of the plaintiff and the defendant in any such comparison must be the proximate cause of the injury to the plaintiff. If the negligence of the plaintiff is equal to or greater than that of the defendant, the plaintiff may not recover from the defendant. See e. g. *McDowall Transport Inc. v. Gault*, 80 Ga.App. 445, 56 S.E.2d 161 (1949). While no finding of a lack of ordinary care or diligence on the part of the Government has been made because of the insufficiency of any proof in that regard, the existence of such a finding and a conclusion of its proximate cause for the injury to the plaintiff would be negated by plaintiff's equal negligence proximately causing the injury. I have concluded that the acquiescence of the plaintiff is equal to or greater than any acts on the part of the Government or its contractor which resulted in the loss of the vaults and the remains. Again, the conclusion that there is no liability against the Government is demanded.

The Government insists that plaintiff's knowledge that the Westover plots were quitclaimed back to the cemetery in 1962 serves as a bar to the cause of action under 28 U.S.C. § 2401.[6] This is slight evidence of the commencement of a time limitation period in a tort suit. Knowledge of the quitclaim is not sufficient to require the conclusion that plaintiff knew that the vaults were not in the plots at Westover. The Government's contentions relating to the plaintiff's knowledge (or lack thereof) require more imagination than logical inference from the evidence. I conclude that the limitation period commenced the day the assumed graves were probed in 1975.

The evidence presented here against the Government does not fall easily into a case of *prima facie* negligence. Even if negligence was proved, the facts that plaintiff permitted the vaults to be left in the hands of a bailee [who was really of his own choosing] and allowed them to remain in an unsuitable place for an extended period of time is enough legal circumstance to deny recovery.

## ORDER

Upon the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED that the Clerk of this Court shall enter judgment against the plaintiff and in favor of the defendant forthwith.

---

**6.** 28 U.S.C. § 2401 provides: "(a) Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases. (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."